In our first case is Bruker Cellular Analysis v. University of British Columbia, 2023-22-27. Mr. Peters. Good morning and may it please the Court. A patent claim is obvious if a person of ordinary skill would have been motivated to modify or combine the prior art to achieve the claim and would have had a reasonable expectation of success in making that combination or modification. These are two separate and distinct requirements under the law, and the board below erred by conflating them when weighing the evidence before them. The board below also committed legal error when it required that the motivation to modify or combine the DeMoff and Park references come from the references themselves rather than from the knowledge or allowing it to come from the knowledge of a person of ordinary skill in the art. These legal errors require the court to vacate and remand for further proceedings. Can there be an overlap in the evidence that is required in order to show motivation to combine and to establish reasonable expectations? It is possible for that, Your Honor, just if one considers what evidence there might be, but that was not the case here. With one exception, the evidence considered by the board in deciding motivation to combine was all directed at whether or not a person of ordinary skill would have a reasonable expectation of success. For example, in Appendix 31, the board said, DeMoff does not also address the difficulties a person of ordinary skill in the art would face in adapting the prior art. In Appendix 52, they considered whether a person of ordinary skill would have considered a modification feasible. In Appendix 68, whether or not a person would have a sufficient background and skill to be able to adapt a prior art method to... So you did say there is an overlap, correct? It is possible for a particular fact to speak to both motivation and reasonable expectation of success. The facts in this case that the board considered concerned only reasonable expectation of success and not motivation, and therefore it was error for the board to rely on those facts when making its finding about motivation. The one thing that the board did consider that spoke to motivation was a finding that DeMoff and Park did not motivate their own modification. And that is, under KSR, an improper requirement to place on the petitioner. Counsel, the board took a pretty close look at all the references. It decided that DeMoff relates to general recovery. It wasn't specific to selective recovery. It could just as well have been useful for removing waste. Park was just culturing, not recovery. Kovac would require substantial experimentation to be adapted. And Pell, the patent, why don't we do the same? For each of those issues, Your Honor, the first two speak to whether or not DeMoff and Park have to motivate their own modification. Yes, Park disclosed a microfluidic device and a method for culturing cells to perform experiments on those cells in its device. And what we know from Kovac, what we know from the applicant that admitted prior art, and what we know from just common sense is that if one is doing cell biology experiments in a microfluidic device, as disclosed in Park and as disclosed in DeMoff, it would have been obvious, or sorry, a person of ordinary skill would have been motivated to recover cells of interest for further investigation. And so from that perspective, the fact that if it were true that Park was designed only for culturing and Park did not itself disclose selective recovery, well that just means that it is missing but one of the many elements of the claim. And that last step of Claim 1 of the 408 patent is provided by the knowledge of a person of ordinary skill in the art and in Kovac, which teaches selective cell recovery. As to your third question, your honor, about whether or not there would have been undue experimentation required to adapt Kovac's selective cell recovery through laser levitation for use in devices like DeMoff's and Park's, that speaks to the skill and capability of a person of ordinary skill in the art, and that means it speaks to that hypothetical person's reasonable expectation of success. When you look at the evidence of what a person of ordinary skill would have been motivated to do, the evidence is clear that a person of ordinary skill would have been motivated to recover and selectively recover cells of interest. The board below made no finding about whether that person of ordinary skill would have had a reasonable expectation of success and it is not for this court to sit as a fact finder to consider the evidence that was before the board and decide that issue for itself. This is one reason why vacating the board's decision and remanding for a correct application of the law and a consideration of the evidence on reasonable expectation of success is appropriate. The case may have had a different procedural posture had the board proceeded to make that determination, but it did not, and so the best course of action and the correct course of action is to reverse the board's decision on motivation to combine and vacate its decision on patentability and remand for further proceedings about whether or not a person of ordinary skill would have had a reasonable expectation for modifying DMOF in part. I guess your problem, for example, with respect to DMOF is that what that reference showed was the analysis taking place in the module on the chip, a lab on a chip, and that there was insufficient showing of a motivation to change that approach by removing the individual cell from the module, and that's what the board said. And, you know, maybe the board is right and maybe the board is wrong, but that's a substantial evidence question. It is, Your Honor, a substantial evidence question, but with one exception. If you look at the board's analysis on that particular issue with DMOF, what they were asking and what they were deciding was that DMOF itself did not motivate that modification. Now, if we accept that finding as true, if you look at and decide that that is evidence that speaks to motivation, that is one thing, but it is an improper statement of the law under KSR and the holdings of this court that a reference must motivate its own modification. So in this regard, DMOF and PARC really stand in the same if one is crediting the board's factual findings, and that is if one concluded that both DMOF and PARC concerned performing cell biology experiments, culturing cells in trenches or wells and studying them, and are completely themselves utterly silent about selectively recovering the cells following those experiments, if one found that to be the case. Nevertheless, what the evidence shows is that in the prior art, the knowledge of a person of ordinary skill, and with expressed disclosures in COVAC in the prior art, that a person of ordinary skill would have been motivated to recover cells of interest and employ known techniques in the DMOF and PARC devices and methods to accomplish that. At the end of the day, wouldn't it be appropriate for us to look at this as harmless error? Your Honor, I think not. And the reason why is because there has been no finding from the board below with respect to reasonable expectation of success. And so while I don't think it reasonable, even if the court had the firm conviction looking at the evidence in the record that a person of ordinary skill would not have had a reasonable expectation of success to modify PARC and DMOF, that is not the court's role to weigh that evidence and make that factual determination. Counsel, you want to save three minutes? You're now into your rebuttal time. Thank you very much, Your Honor. I will take the rest of my time for rebuttal. You will save it. Mr. Euston. May it please the court. I'll first address why there's no reversible legal error as a result of the board's motivation to modify analysis, and then I'll address the substantial evidence that supports the board's finding, the board's factual findings. The board did not conflate motivation to modify and reasonable success analysis, but the board did was first look at the differences between the prior art references that Brugger cited. Looking at prior art differences is a central part of the motivation to modify analysis, as this court has found. The board, looking at DMOF and PARC, the two primary references, found that they did not disclose one of the key limitations, the selective recovery limitation. Not only that, the board found that they didn't just not disclose this limitation, but they also were designed in a way with key design aspects that prevented their use for selective recovery. As a result... Because you had to peel back, you mean? Well, actually, so neither PARC nor DMOF, the structure of those devices, allowed for peeling back, Your Honor. So they were constructed in a way that they were closed systems with an input and an output. The peel back argument that Brugger raises is based on a non-prior art reference, the Hahn reference, which the board did look at as well. In that reference, however, Hahn described that peelable layer that it's describing as novel and distinguished it from the prior art. So that was considered as background evidence to show that a person of ordinary skill would actually not have the knowledge that they could peel a layer like that as described in the Hahn reference. As a result of the prior art references, DMOF and PARC not disclosing the key limitations, selective recovery, Brugger turned to the Kovac reference, which describes a laser pushing a cell out of a well. As the board found, however, Kovac is describing this laser technique for uncultured cells, cells that have not been cultured in the well. The claim here, claim one, is a method to be used with cultured cells. As a result, the laser parameters that are described in the Kovac reference, the board found are not applicable to references like DMOF and PARC that are designed for culturing cells in the well. As a result, the board found that there were substantial differences between DMOF and PARC and Kovac, and as a result of those substantial differences, Brugger had failed to explain how the person of ordinary skill would combine those references, which is part of the motivation to combine analysis. Brugger went on to argue that the general knowledge, the general background knowledge of the person of ordinary skill, they would be able to take the parameters from the Kovac reference and modify them in a way that they could work with DMOF and PARC. As a result, the board looked at the general knowledge of the POSA. In that situation, though, the POSA here is someone with just an undergraduate degree. POSA being a person of ordinary skill in the art, it's nice to speak English in a court. I apologize, Your Honor. Yes, the person of ordinary skill in the art here is undisputed, and that person is someone with only an undergraduate degree with only a few years of experience. Based on testimony and evidence below, the board found that this person of ordinary skill would not have the general background knowledge to be able to modify the laser parameters described in Kovac for use in PARC and DMOF. The analysis of the general background knowledge of the POSA is, again, something that is a key aspect of the motivation to modify analysis as discussed in KSR. So while Bruker might point to a few errant aspects or statements within the board's final written decision, a review of the entire written decision, we can tell that the board is not conflating the motivation to modify analysis with reasonable expectation of success, but rather is looking at the differences between the prior art and the general knowledge of the POSA, which are both aspects of motivation to modify. Turning now to Bruker's argument that the board required the primary references to provide their own motivation, simply reviewing the board's final written decision as well as the board's denial of the rehearing, the board made it very clear that they did not have such a requirement. While they did look at the primary references DMOF and PARC and determined that they did not teach or disclose the limitation of selective recovery, they still looked at the background knowledge of the POSA as put forward by Bruker. However, as the board explained in both the final written decision and rehearing, they did not find the petitioner's argument persuasive in light of the background knowledge in the art. As such, there was no requirement by the board that the primary references provide their own motivation. Turning now to the substantial evidence that supports the board's factual findings, the board reviewed all three of the references, COVAC, DMOF, and PARC in detail. It even reviewed non-prior art, the Hahn reference, as well as alleged applicant's prior art, as well as reviewed the testimony and declarations of two experts and wrote a substantial 72-page final written decision, as well as considered additional arguments in a rehearing denial. Based on all of that information, the board determined that there was substantial evidence showing that Bruker was unable to prove any of their alleged motivations to modify the primary references to result in the claim one, to teach selective recovery. Would it be fair to say that the record established there was a motivation for selective recovery, but not a motivation to modify these references to achieve it? I would say that the board found that there was selective recovery in the prior art in the COVAC reference, but did not find a motivation to use selective recovery. I would say yes, Your Honor, but not to use selective recovery with DMOF and PARC. DMOF and PARC were specifically designed so selective recovery wasn't possible, and the differences between those references and what's required for selective recovery didn't make that possible for a person of ordinary skill to have that motivation to make those changes. Unless Your Honors have any further questions. No, thank you, Counsel. Thank you. Mr. Peters has up to three minutes for rebuttal if you need it. Thank you, Your Honor. We just heard from Appellee's Counsel that the board found that the PARC and DMOF devices, that their design prevented them from selective recovery of cells. The evidence before the board shows that that is not so, and that was in fact not a basis for the board's decision. What the evidence shows is that the DMOF device allowed cells to be selectively recovered from it using a simple pipetting step. That was known to a person of ordinary skill in the art. That is shown in COVAC, that was shown in the declarations of both experts from each side. With respect to the Han reference, it had a top cover that needed to be in place during the experiments, but was in fact removable. A person of ordinary skill in the art motivated to selectively recover cells of interest would have simply removed the cover and pipetted out the cells that they wanted. Last is COVAC's laser levitation technique would have been applicable to both DMOF and PARC. COVAC taught about the ubiquitous need to select individual cells out of a larger population, and said that its laser levitation technique that it had described generalizes easily, was straightforward, and was user-friendly. But again, just to underscore the issue, the question is, would a person of ordinary skill have been motivated to recover cells of interest from the DMOF and PARC devices after their experiments were run? The evidence before the board shows the answer is clearly yes. The board's contrary decision is not supported by substantial evidence. The board relied heavily on evidence that speaks to the ability of a person of ordinary skill to accomplish that goal. But that is the issue of reasonable expectation of success, which the board expressly did not address. For these reasons, we ask the court to vacate the board's decision, and remand for further proceedings on the issue of reasonable expectation of success. Thank you, counsel. The case is submitted.